**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.A.**

**No. 24-455** (Cabell County CC-06-2021-JA-138)

## MEMORANDUM DECISION

Petitioner Mother T.W.[1] appeals the Circuit Court of Cabell County's July 19, 2024, order terminating her parental rights to S.A., arguing that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in August 2021 alleging that the petitioner actively used drugs, posing an imminent risk to the child, and failed to provide for the child's basic needs. After Child Protective Services ("CPS") implemented two different safety plans over several months in an attempt to address the petitioner's issues, she eventually disappeared. Shortly before the petition's filing, the petitioner and the child presented to a healthcare facility where the petitioner stated that she was manic and threatened to commit suicide. The child was observed to be dirty and lack proper clothes or food. According to the DHS, the petitioner had been "living on the streets." The petitioner refused to provide CPS with her current address and admitted to using Suboxone and methamphetamine.

At a hearing in October 2021, the petitioner stipulated to actively using drugs to a degree posing imminent risk to the child. On this basis, the circuit court adjudicated her as a neglectful

---

[1] The petitioner appears by counsel Neil Bouchillon. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Krista Conway appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

parent and granted her a post-adjudicatory improvement period. The terms and conditions of the improvement period included, among other things, that the petitioner drug screen and maintain sobriety, continue with outpatient treatment, obtain stable housing and employment, and complete parenting skills classes. In March 2022, the DHS attempted a trial reunification of the petitioner and the child. However, this was terminated after a few weeks upon the petitioner's eviction for nonpayment of rent and neighbors' complaints of heavy foot traffic and screaming in the home.[3] Around this time, a CPS worker asked the petitioner about a new boyfriend who was allegedly living with her, but the petitioner refused to provide the requisite information for the DHS to conduct a background check. In June 2022, the petitioner moved the circuit court to extend her improvement period, which the court granted.

The matter came on for disposition in April 2023. Multiple witnesses testified to the petitioner's inconsistent participation and failure to improve. A CPS worker testified that although the petitioner complied with some aspects of the improvement period, the petitioner's inconsistent and fluctuating prescription Suboxone levels indicated misuse or abuse, along with a recent diluted drug screen. Additionally, the petitioner displayed difficulty maintaining stable employment, losing one job because she had misused management codes to steal a six-pack of Mountain Dew; she further failed to provide the DHS with pay stubs to confirm her employment. The CPS worker also testified that while the petitioner had participated in parenting services, they were not effective as evidenced by the petitioner's use of physical discipline and threats to "bust [the child's] butt" despite repeated instructions that physical discipline was not permitted. The parenting services provider testified that the petitioner had not contacted her to schedule services since February 2023 and that the petitioner's reliance on physical discipline after instruction on appropriate discipline strategies demonstrated a lack of improvement. According to the CPS worker, although the petitioner "tried to comply with her case plan . . . there has been a lot of inconsistency," while the parenting services provider explained that the petitioner's instability caused concern that she "would interfere with [the child's] ability to function on a daily basis." The CPS worker recommended termination given the petitioner's instability and the child's need for stability and permanency.

The circuit court continued disposition to May 2023, at the petitioner's request, to allow her to bring in a medical provider to testify. At that hearing, however, the petitioner did not call any of her medical providers, instead testifying on her own behalf that she participated weekly in a recovery resource group, received mental health counseling and medical care, and took Suboxone only as prescribed. She testified that she had been screening "clean" since October 2021, and that her doctor attributed the fluctuations in her Suboxone levels to her metabolism. The petitioner admitted that she was "let go" from another job during her improvement period "because [she] got caught selling [a cigar] to an underaged child," but testified that she currently had stable employment. She denied spanking the child at the supervised visit, claiming she only "smacked her little hand." When asked about a recent drug screen that was positive for methadone, she testified it must have been a mistake, because she did not take (nor had she been prescribed) methadone.

---

[3] The child's foster mother later testified at disposition that when the child returned to her care after the trial reunification she was "almost like a different child," withdrawn and afraid of people. It took several weeks for the child to return to her usual "bubbly" personality.

The petitioner's disposition was continued again to June 2023 to allow for potential rebuttal witnesses. At the continued hearing, the petitioner provided additional testimony that she recently switched to a new outpatient clinic for drug rehabilitation and revoked her release of information at the initial treatment center. She admitted that she did not notify the DHS of this change and testified that she did not know that her case plan required her to permit the release of pertinent medical records. When asked why she revoked the release, she stated "I don't think anybody and everybody should be able to get my information." The DHS proffered that the revocation prevented CPS workers from corroborating the petitioner's explanation for her fluctuating Suboxone levels. A CPS worker also testified the petitioner had recently missed drug screens. The DHS moved to terminate based on the petitioner's noncompliance with her case plan; the guardian agreed.

Based on this evidence, the circuit court found that the DHS did "everything possible to help [the petitioner] reunify with her child" and provided "all available services," but "they have . . . not been effective." The court also noted that the case had been open since August 2021 and, during that time, the petitioner had not shown the ability to "maintain stability and consistency." Therefore, the court found that "there is . . . no reasonable likelihood of [the petitioner] taking the steps that she needs . . . to obtain the ability to adequately parent [the child] at this time." In its subsequent written order, the court noted that although the petitioner claimed the fluctuations in her Suboxone levels "were a result of her metabolism which was represented to her by her treating physicians," she then "prevented the parties and the Court [from] making such a determination by . . . revoking her release[] of healthcare information." Finding that there was "no likelihood that the conditions of abuse and neglect will be corrected in the future" given the petitioner's "refusal . . . to cooperate with the [DHS] to correct the deficiencies in parenting," and that there was "no alternative disposition . . . that [could] assure the physical and emotional well-being of [the child]," the court terminated the petitioner's parental rights to S.A.[4] The petitioner appeals from this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court's findings that she did not cooperate with the DHS and that, as a result, there was no likelihood that the conditions of abuse and neglect would be corrected in the near future were clearly erroneous. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help."). In support, the petitioner argues that the weight of the evidence instead demonstrates her capacity to resolve the neglect, given her "substantial[] cooperation" and participation in various aspects of the case.

The petitioner's argument, which in essence asserts that there was insufficient evidence to support the court's findings, "displays a fundamental misunderstanding of our role as a reviewing court." *In re D.S.*, ___ W. Va. ___, ___, 914 S.E.2d 701, 707 (2025). As we have explained, "[w]e

---

[4] The father's rights were also terminated. The permanency plan for S.A. is adoption in her current placement.

review the circuit court's decision under . . . deferential standards . . . and do not reweigh the evidence or make credibility determinations." *Id.* Notably, the petitioner admits that she failed to provide pay stubs, stopped parenting services in February 2023, switched drug treatment providers without advising the DHS, and revoked the DHS's authorization to access her medical records.

Failure to respond to and/or follow through with all aspects of one's case plan constitute circumstances in which there is no reasonable likelihood that conditions of abuse and neglect can be substantially corrected. *See id.* § 604(d)(3) (providing "no reasonable likelihood that conditions of neglect and abuse can be substantially corrected" includes circumstances where parents "have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child"). Despite the petitioner's receipt of extensive services, the record demonstrates that she was unable to maintain stable employment, that her parenting skills did not improve, and that she thwarted the DHS's efforts to rule out Suboxone abuse.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 19, 2024, order is affirmed.

Affirmed.

**ISSUED**: July 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV